UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KARI L. LARSON,

                  Plaintiff,

      v.

QUILLAYUTE VALLEY SCHOOL
DISTRICT No. 402, BRIAN WEEKES,
and his marital community, KYLE
WEAKLEY, and his marital community,

                  Defendants.

CASE NO. 3:24-cv-05716 BHS

ORDER

THIS MATTER is before the Court on plaintiff Kari Larson's motion for an award of attorneys' fees following the jury's $249,760 verdict on her hostile work environment WLAD claim against defendant QVSD. Dkt. 249 (citing RCW 49.60.030(2)).

Also pending are defendant Kyle Weakley's motions for bill of costs, Dkt. 262; and to re-tax costs, Dkt. 280; defendant QVSD's motions to consider combined briefing, Dkt. 271; to extend time, notice of surreply, motion to strike, and related matters, Dkt. 272; and Defendant Brian Weekes' motion to retax costs, Dkt. 284, which is a correctly labeled version of his motion for reconsideration, Dkt. 277.

ORDER - 1

**A.    Fees**

Attorney Gallagher seeks an award for 561.7 hours at his rate of $650 per hour, or $365,105. Attorney Anyan seeks 873.9 hours at her hourly rate of $550, or $480,645. Dkt. 249 at 2. Larson contends the requested rates and hours are reasonable. She relies on her attorneys' own Declarations and billing records, and the Declaration of fellow attorney Mitchell Riese, who describes his experience and knowledge. Dkt. 252. He opines generally that the requested hourly rates are reasonable. *Id*. Riese does not explore or compare other rates for attorneys with similar experience and skill in this community, and he does not opine about the reasonableness of the hours expended or the total fee requested.

Larson also asks the Court to apply a "multiplier" of 1.1, 1.25, or 1.5 to increase the fee award. The multiplier request is based on the contingent nature of the undertaking, the fact her attorneys are sole practitioners, on Larson's residence in Forks (resulting in extra travel time), and on Larson's contention she uncovered a "smoking gun." Dkt. 249 at 12 (citing *Wash. State Physicians Ins. Exch. & Assn'n v. Fisons Corp.*, 122 Wn.2d 299, 334, 858 P.2d 1054 (1993) (approving a 1.5 multiplier where "smoking gun" documents were withheld and ultimately uncovered).

Defendant QVSD opposes the request, arguing Larson's victory was "Pyrrhic at best," because the jury awarded her only a fraction of what she sought and of what QVSD offered in settlement. Dkt. 259 at 1. It argues that that Larson's attorneys' hourly rates are unreasonably high, that Larson's attorneys wasted time and "grossly inflated"

their actual time, and that their records disclose billing discrepancies. *Id*. It argues that Larson ignores that any post-lodestar multipliers [adjustments] go "up *and down*." *Id*. at 4. It argues for a severely reduced total reasonable attorneys' fee of $80,000, or a third of the verdict. *Id*.

### 1.    Attorneys' Fee Standard

The first step in determining a reasonable attorney's fee is to calculate the "lodestar." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551–52 (2010); *Scott Fetzer v. Weeks*, 114 Wn.2d 109 (1990); *Absher Constr. v. Kent Sch. Dist. No. 415*, 79 Wn. App. 841, 847 (1995).

The Ninth Circuit recently reiterated that, to determine the lodestar, courts calculate the prevailing market rate in the relevant community and then multiply it by the number of hours reasonably expended on the case. *United States ex rel. Thrower v. Academy Mortgage Corporation*, 172 F.4th 703, 707 (2026) (citing *Perdue,* 559 U.S. at 551 (simplified), and *Edmo v. Corizon, Inc.*, 97 F.4th 1165, 1168 (9th Cir. 2024)). The benefit of the lodestar method is that it "cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." *Id.* (citing *Perdue*, 559 U.S. at 552).

The Court should exclude overstaffed, redundant, or unnecessary time. *Hensley*, 461 U.S. at 434. The Court must also consider the extent of Plaintiffs' success, as that is a "crucial factor" in determining an appropriate award. *Id.* at 440; *Blair v. Wash. State Univ.*, 108 Wn.2d 558, 570 (1987).

**2.      Reasonable hourly rate.**

The Court determines reasonable hourly rates by looking to the "prevailing market rates in the relevant community." *Bell v. Clackamas County*, 341 F.3d 858, 868 (9th Cir. 2003). This usually involves an evaluation of the hourly rates of comparable attorneys in the forum district. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). The Court should also consider the experience, skill, and reputation of the attorney requesting fees. *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995).

Attorneys Gallagher and Anyan contend that their requested rates are reasonable given their experience and skill and the fact the prevailed in a difficult case. They do not compare their requested rates to attorneys with similar experience.

QVSD argues that Gallagher is entitled to no more than $400 per hour, and Anyan no more than $250. Dkt. 259 at 6. These rates are based on the Declarations of Attorneys Freeman and Bridges, Dkts. 260 and 261. Freeman provides specific examples of rates in Seattle for employment litigation, including her own rate of $318–400. Dkt. 260 at 13. She opines that the work reflected in this case does not warrant that type of rate. She also emphasizes that Gallagher and Anyan have low overhead, implying a lower reasonable rate. Dkt. 260 at 12.

Attorney Bridges' 68-page declaration opposing Larson's fee request reiterates that her attorneys have low overhead, and therefore have a lower reasonable hourly rate. Dkt. 261 at 2–8. Bridges focuses on his own experience, and the reasonableness of his own his hourly rate, including his much higher, downtown-Seattle-with-a-view-overhead. *Id*. at 4. He contends that attorneys' hourly rates are driven by "geography and

overhead." *Id*. at 3; see also Dkt. 259 at 6 (explaining that QVSD's proposed reduced rates for Larson's attorneys are based on geographical location, lack of overhead, and in Anyan's case, lack of experience).

An attorney's reasonable hourly rate reflects primarily his or her skill and experience in the relevant community. *Bell*, 341 F.3d at 868. The Court is not aware of any authority suggesting that overhead is a stand-alone element of a reasonable hourly rate.[1] Instead, it is part of the geography question—what does a comparable attorney charge in the relevant community for similar work. *Gates*, 987 F.2d at 1405; *Schwarz*, 73 F.3d 895 at 906.

Bridges emphasizes his unique experience as a WSBA governor, contending that it has given him insight into reasonable attorney hourly rates in rural areas outside the four counties which he asserts the majority of Washington attorneys are "clumped": "King, Clark, Jefferson, and Spokane Counties." Dkt. 261 at 2. He contends that Larson's counsel's overhead is lower than these metropolitan areas, thus supporting a lower reasonable hourly rate. *Id*.

King County is the most populous county in Washington, by far, and it has the most attorneys. Spokane is fourth, and Clark is fifth. Jefferson County is twenty-seventh.

---

[1] Relevant considerations are listed in RPC 1.5(a). These factors are consistent with the so-called the *Kerr* factors, which were for years used to adjust the lodestar rate. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992). Most of these factors are subsumed in the lodestar calculation. *Parsons v. Ryan*, 949 F.3d 443, 467 (9th Cir. 2020); *Thrower*, 172 F.4th at 709.

None of these authorities suggest that lower overhead necessarily implies a lower reasonable rate.

Pierce County, where this Court sits and the case was tried, is Washington's second most populous county. Pierce County is the "relevant community" for ascertaining a reasonable hourly rate for comparable attorneys. Neither Larson's fee request nor QVSD's opposition to it mention Pierce County or discuss what a reasonable hourly rate is here. Fortunately, the Court may rely on its own knowledge and familiarity with the legal market in determining a reasonable hourly rate. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011). The Court is quite familiar with attorneys' hourly rates in this community.

The requested rates are reasonable for the kind of work that similarly experienced attorneys charge here. Anyan's requested $550 per hour is perhaps on the higher end of reasonable for her experience. It is equal to Bridges' rate and almost as much as Gallagher's. But $250 per hour would be unreasonably low for an attorney with her experience doing this kind of work here, and that proposed alternate rate is rejected. Anyan's and Gallagher's requested hourly rates are reasonable for attorneys of their skill and experience doing this sort of work in this community.

**3.    Reasonable number of hours.**

The second step of the lodestar calculation involves another exercise of the Court's informed discretion: the number of hours "reasonably expended" on the litigation. "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

ORDER - 6

With that in mind, however, in determining the reasonable number of hours, the Court must exclude those hours that are excessive, redundant, or otherwise **unnecessary**. *Hensley*, 461 U.S. at 434; *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (emphasis added). This factor requires a review of billing records and an informed estimate of how much any given task might reasonably take. The Court also considers the opposition's review of the prevailing party's attorneys' timekeeping records, and its own observations throughout the litigation.

The Court notes at the outset that more experienced attorneys are able to charge higher reasonable rates because they have honed their skills and judgment; they are wiser and generally more efficient.

Larson contends that her attorneys spent a reasonable number of hours litigating this case given the circumstances, including the roadblocks they faced in discovery. She contends that most of the work (documents, witnesses, evidence) addressed the primary hostile work environment claim upon which she prevailed, even if it also supported the negligence claims upon which she did not. She contends she has not sought time for work solely related to unsuccessful or abandoned claims. She claims that work was divided between her attorneys, not duplicated. Dkt. 249.

QVSD's response argues that 266 of Attorney Gallagher's claimed hours and 359 hours of Attorney Anyan's are "not compensable." Dkt. 259 at 5.

It purports to identify work that was unproductive, duplicative, administrative or implausible. As one example, it emphasizes its view that Larson did not ever intend to settle, detailing its offers and her demands. Dkt. 259 at 6. It thus asserts that Attorney

Gallagher's claimed 72 hours in preparation for the failed mediation is not reasonable. It also identifies an instance where Gallagher billed 20 hours in a day, during trial. *Id*. at 1.

QVSD identifies various other improbable or seemingly inflated billing entries, and generally objects to awarding fees for work, such as filing an EEOC claim, that did not relate to the claim upon which Larson prevailed. It also points out that Larson was generally not successful in motions practice, and suggests that her own summary judgment motion was not reasonably filed. *Id*. at 15–23 (citing *Conti v. Corporate Services Group*, 30 F.Supp. 105 1078 (W.D. Wash 2014)).

QVSD also contends that the Court should re-visit its preliminary ruling on the cost of the Special Master, asserting that her Report vindicated it and blamed plaintiff's counsel for the difficulty of her work. Dkt. 259 at 8, 20. It asks the Court to apportion some or all of the $40,125 it paid to the Special Master, to Larson. *Id*. And it asks the Court to offset the $76,000 in fees that counsel has already directly[2] received in sanctions. *Id*. at 8–9.

These requests are **DENIED**,[3] but the Court has read the Special Master's report and the fact that Larson has already obtained a significant fee award in this case weighs against awarding further fees for work related to the topics in that report.

---

[2] QVSD suggests that Larson's attorneys are taking a portion of her verdict *and* any fees awarded by the Court as a reasonable fee. Dkt. 259 at 24. Such" double dipping" could violate RPC 1.5.

[3] On December 31, 2025, the Court appointed Judge Kallas as Special Master and defined her responsibilities. The Court ordered QVSD to pay 75 percent and Larson to pay 25 percent of Special Master's fees. Dkt. 128 at 4. The Court explained that Larson was not without fault in the discovery disputes, and that the fee allocation incentivized both parties to cooperate and minimize the Special Master's fees. Dkt. 128 at 4–5. On January 13, Larson significantly

ORDER - 8

The Court agrees that QVSD has identified some hours that were not reasonably spent, and that the number of hours is high in the context of this case. It also observes that too much of the attorney time spent litigating this case was unnecessary and counterproductive for the parties and the Court. The Special Master seems to have reached the same conclusion. *See* Dkt. 259 at 20–21 (quoting Special Master's report).

In the Court's view, neither Larson's *nor* QVSD's attorneys were reticent to make the other side (and thus the Court) waste time on minor or ultimately irrelevant disputes. The tactics and discovery conduct attributable to both parties that led the Court to reluctantly appoint a Special Master were also an unreasonable waste of each counsel's *own* time.

There are numerous examples in the record—the avoidable discovery disputes and the need for a special master to resolve them, the motions for sanctions, the proposed jury instructions, both parties' consistent practice of filing overlength and/or additional briefing, and filing motions that could have been left unfiled. Indeed, the voluminous and excessive filings on the current issue demonstrate why a significant reduction in hours is warranted. There are *eighteen* separate docket entries related to this garden variety motion for attorneys' fees, alone, including at least three additional motions: Dkts. 249, 250, 251, 252, 257, 259, 260, 261, 266, 267, 268, 269, 271, 272, 273, 274, 279, and 282.

---

narrowed the scope of her discovery requests, and thus the Special Master's task. The Special Master primarily ensured QVSD produced proper privilege logs. Consistent with this limited scope, the Court informed the parties that it would order QVSD to pay 100 percent of the Special Master's fees. Dkt. 144 at 12. It has since indicated a willingness to revisit that split. *See* Dkt. 170. The Court will not alter the 100 percent allocation.

ORDER - 9

Too many of these filings were unnecessary and unproductive. QVSD's response was filed 17 hours late, and it divulged what QVSD had offered in mediation. Dkt. 259. In response, Larson filed a motion for leave to file an overlength reply, because otherwise her motion to strike the response as untimely and improper would put her reply over the page limit. Dkt. 266 (citing LCR 7(f)). Her reply was filed the same day Dkt. 267. It asserts "she timely moved for leave to file this over-length brief (Dkt. 266), which was unfortunately not addressed in time." Dkt. 267 at 1.

A motion to file an overlength brief is a "same day" motion, LCR 7(d)(1), but it must be filed not later than three days *before* the underlying brief is due; not the same day that brief is filed. LCR 7(f). Nevertheless, the Court granted Larson's motion to file an overlength brief. Dkt. 270. The Court need not consider the *Pioneer* factors to consider a responsive brief that is a day or three late, absent some prejudice. Like many of the extracurricular disputes litigated throughout this case, it is *de minimus*. Larson's motions to strike QVSD's response as untimely, and to strike QVSD's references to its settlement offers, are **DENIED**.

In a Declaration, Anyan also outlined troubling but irrelevant accusations about Bridges, unrelated to this case or the reasonableness of the fee she seeks. Dkt. 269. In response, QVSD filed two more motions. The first was a "motion to consider briefing," Dkt. 271, which implies the mildly insulting and unwarranted concern that the Court might not consider the already filed briefs associated with a pending motion, absent an additional motion asking it to do so. The Court has considered every brief the parties

have filed in this case, as is its uniform practice. The motion to consider briefing, Dkt. 271, is **DENIED**.

QVSD's second extra motion asks the Court to consider its untimely response, which it has, and to strike under Rule 12(f) portions of Anyan's Declaration, which it will not. Dkt. 272. It again asks the Court to evaluate Larson's fee request in light of the money she left on the mediation table. Dkt. 272 at 5–9. To be sure, the plaintiff's success is a factor in the overall reasonableness of the fee, *Blair*, 108 Wn.2d at 570, but Larson prevailed on her primary claim. There was apparently not a Rule 58 offer of judgment, which would change the calculus on which party prevailed. But without one, QVSD's settlement offer does not change the fact Larson obtained a verdict; the offer she rejected does not alone mean she actually "lost at trial." *Id*. at 5. QVSD's motion for an extension of time, Dkt. 272, is **GRANTED.** The remainder of that motion is **DENIED**.

***

The Court concludes that not all of the hours Larson's attorneys spent on motions practice were necessary or reasonable in the context of this case, even though not all of the blame falls on them. It also agrees that a significant portion of the specific hours requested should not be included in the lodestar calculation, for the reasons outlined in QVSD's response, Dkt. 259.

It concludes that 325 hours of Gallagher's time, and 525 hours of Anyan's, were reasonably spent in the circumstances of this case. The lodestar attorneys' fee amounts are:

ORDER - 11

| Gallagher | | Anyan | |
|---|---|---|---|
| Hours | 325 | Hours | 525 |
| Rate | $650 | Rate | $550 |
| Total | $211,250 | Total | $288,750 |

### 4.     Further adjustments are not warranted.

Because the lodestar calculation is comprehensive, any enhancements to it are "rare and exceptional." *Perdue*, 559 U.S. at 554 (simplified); A multiplier may be awarded only upon "specific evidence" that the lodestar fee is "unreasonably low or unreasonably high." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (simplified); *see Thrower*, 172 F.4th at 709–711. Departures from the lodestar rate are to be "rare" and apply only when "the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue*, 559 U.S. at 554. Indeed, reliance on factors . . . subsumed in the lodestar determination is an abuse of the trial court's discretion. *Parsons v. Ryan*, 949 F.3d 443, 467 (9th Cir. 2020); *Thrower*, 172 F.4th at 709.

The contingent nature of the undertaking is generally subsumed in the lodestar, and a court may not adjust a reasonable fee based on a contingent fee agreement. *See VanGerwen v. Guarantee Mt. Life Co.*, 214 F.3d 1041, 1048 (9th Cir. 2000). The Court has already addressed counsels' sole practitioner status; it is neither a reason to lower the reasonable hourly rate nor a reason to apply a multiplier to the lodestar figure. Travel to

ORDER - 12

Forks is included in the hours sought. The "smoking gun" email in this case was not akin to the discovery abuses at issue in *Fisons*.

Nor is the fact QVSD offered more than the jury awarded a basis for departing downward from the lodestar award to a prevailing plaintiff. The Court will not apply a multiplier, or otherwise adjust the reasonable lodestar figure.

The Clerk shall enter an **amended judgment** reflecting this fee award. It, like the initial judgment, earns interest at the federal, not the state, rate. For a judgment entered April 10, 2026, that rate is **3.69%**. Larson's request for the higher state law rate is **DENIED**.

**B.     Costs**

Weakley's motion for bill of costs was filed May 11, 31 days after the Court's April 10 judgment. Local Civil Rule LCR 54(d)(1) requires such a motion to be filed within 21 days of the judgment. Weakley's motion for bill of costs, Dkt. 262, is **DENIED**.

Weakley's motion to re-tax costs, Dkt. 280, and Weekes' motion to retax costs, Dkt. 284, are **GRANTED**. Those defendants prevailed, and the cost bill in Larson's favor, Dkt. 275, is against defendant QVSD only. Weekes' motion for reconsideration, Dkt. 277, is **DENIED** as moot.

The clerk shall enter an amended judgment reflecting the awards in this Order and close the case.

//

//

ORDER - 13

**IT IS SO ORDERED**.

Dated this 2nd day of June, 2026.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 14